# Exhibit 2 –
# Complaint filed November 5, 2018

Electronically Filed
11/5/2018 5:10 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
JAMES J LEE, ESQ.
NV Bar No. 1909
KETTNER LAW
2150 W. Washington St, 402
San Diego, CA  92110
Tel: (619) 756-7300
Fax (619) 363-3944
James@kettnerlaw.com

**EIGHT JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

A-18-784031-C

| | |
|---|---|
| Ciara Williams, | Case No:    Department 4 |
| | Dept No: |
| Plaintiff, | **COMPLAINT:** |
| | 1) Rape |
| | 2) Accessory After the Fact |
| Silvino Hinojosa, and TOPGOLF, LLC | 3) Assault |
| DOES I through X, inclusive and ROES | 4) Battery |
| through X, inclusive, | 5) False Imprisonment |
| | 6) Negligence |
| | 7) Negligent Supervision and Retention |
| | 8) Negligent Infliction of Emotional Distress |
| Defendants. | 9) Intentional Infliction of Emotional Distress |
| | 10) Unlawful and Discriminatory Employment Practices |

COMES NOW, Plaintiff Ciara Williams, by and through her counsel, James J. Lee, Esq., of Kettner Law and as and for her Complaint against Defendants alleges:

**I.**

**PARTIES AND JURISDICTION**

COMPLAINT - 1

1.      Plaintiff, Ciara Williams (Ms. Williams) is a resident of Clark County, Nevada and was at all relevant times an employee of Defendant Top Golf USA LLC (Topgolf).

2.      Defendant, Silvino Hinojosa ("Hinojosa"), is a resident of Clark County, Nevada, and at all relevant times was a managing agent of Topgolf and in doing the things herein alleged was acting in the course and scope of his employment, and his conduct was ratified adopted by Defendant Topgolf by its retention and promotion of him after he committed the wrongful acts alleged herein.

3.      Defendant, Topgolf, is a Delaware limited liability company, with its place of business in Clark County, Nevada at 4627 Koval Ln. 89109.

4.      That the identities of the Defendants, Does I through X, are unknown at this time and may be individuals, partnerships or corporations. Plaintiff alleges that each of the Defendants designated herein as a Doe defendant are individuals whose true names and capacities are unknown to the Plaintiff and are, therefore, sued by their fictitious names.

5.      That the names and capacities, whether individual, corporate, associates, co-partnership, or otherwise of Defendants named herein as Roe corporations I through X, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names.  Plaintiffs will ask leave to amend this Complaint to substitute the true names of said Defendants when their true identities become known.

6.      Plaintiffs are informed and believe and thereupon allege that the Defendants so designated herein as Roe corporations I through X, inclusive are responsible in some manner for their agency, master/servant or joint venture relationship with said Defendants, or otherwise contributed to, as a proximate cause, the events complained of herein.

COMPLAINT - 2

7.     Plaintiffs are informed and believe and thereon allege that each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals and wrong doing.

## II.

## FACTS

8.     In April 2016, Plaintiff, Ciara Williams, 38, commenced work as a fulltime line cook.

9.     Silvino Hinojosa (Hinojosa) was Ms. William's supervisor and also worked in the kitchen.

10.     Commencing in or about late December of 2016, Hinojosa subjected Ms. Williams to daily sexual harassment, including, but not limited to, vulgar and offensive sexual comments and advances; non-consensual touching and groping; thrusting his erect penis against her hips and buttocks while laughing; touching of her buttocks and breasts and incessant, offensive text messaging and telephone calls. Virtually everyone in the kitchen witnessed this highly offensive and unwelcomed conduct.

11.     In December of 2016 at the Topgolf Christmas party Hinojosa became highly intoxicated. He made aggressive sexual advances towards Ms. Williams, groping her and pulling her towards him. Hinojosa's conduct was witnessed by virtually everyone at the party including Topgolf managers, who laughed at Hinojosa's behavior and took no action to intervene or later report Hinojosa's conduct as they were required to do by Topgolf's stated policies.  Hinojosa followed

COMPLAINT - 3

Ms. Williams around the party, continuing to grab and pull on her. Ms. Williams left the party early to escape Hinojosa.

12.     When she returned to work, Ms. Williams' male co-workers and managers mocked her. They said things like "Oh you had fun at the party, didn't you?" and "I didn't know you were that kind of girl."

13.     When Ms. Williams started her employment, she was told that any complaints should be reported to management or to the next manager in line. While Hinojosa was her immediate supervisor, Chris Vaughn (Vaughn) was the next manager in line. When Ms. Williams complained to Vaughn about Hinojosa's conduct, much of which Vaughn had witnessed, he responded by saying that sexual harassment was a norm in a restaurant environment and telling her that she should "get used to it." Ms. Williams then went to manager James Linares (Linares) to report Hinojosa. Linares took did not take any action.

14.     Brian Gomez (Gomez), one of Ms. Williams male coworkers, tried to protect her from Hinojosa. In response other male workers would say things like, "Why are you such a pussy?" to Gomez.

15.     After Hinojosa first groped Ms. Williams in the kitchen, Ms. Williams reported Hinojosa to Human Resources (HR) on at least two occasions. Each time she filled out paper work and was told her complaints would be investigated and she would receive copies of the paperwork. No investigation was done and she never received copies.

16.     At all relevant times, Topgolf was fully aware of Hinojosa's unlawful conduct both because of Ms. Williams' reports to HR and because it was witnessed by Topgolf's managing agents who had a duty to report it and because Hinojosa engaged in a pattern and practice of

COMPLAINT - 4

sexual abuse and humiliation, which at least four other women working in the Topgolf kitchen endured during Ms. William's tenure.

17.     As time passed and nothing was done to protect her from Hinojosa, Ms. Williams, who is a survivor of childhood sexual abuse, became increasingly afraid, depressed, anxious, and withdrawn.

18.     In or around May or June of 2017, Ms. Williams was doing prep work and went alone into the walk-in freezer. Hinojosa followed her in. The walk-in had no windows and thick insulated metal walls that completely blocked any sound.

19.     Once inside, Hinojosa cornered Ms. Williams into the back of the freezer and said, "I want to talk to you." He put his arms around her and said, "I know you want it."

20.     She began crying and trying to fight him off, begging him to stop. She screamed for help. He cupped his hand over her mouth and said, "No, I'm going to have you one way or another."

21.     Hinojosa pinned her arms behind her, pushed her towards the wall and groped everything from her breasts to her buttocks.

22.     He began laughing as he forced his hand into her pants and digitally penetrated her vagina, while saying, "I told you I was going to have you." She tried breaking free of his grip, by kicking at him and struggling to get her hands free. The more she fought him, the more aggressive he became in penetrating her, injuring her vagina badly.

23.     When he finally slightly loosened his grip, she got free, pushed him away, and made her way out of the freezer in hysterics. As she stumbled to the exit, Hinojosa said, "I'm not going to wash my hand for the rest of the day!"

COMPLAINT - 5

24.     She ran out past the kitchen manager's office. She wept uncontrollably for five minutes in the locker room. She gathered her things intending to quit and ran into the parking lot to go home.

25.      Ms. Williams coworker Gomez, who had always tried to protect her from Hinojosa, saw her running out of the freezer in tears and followed her into the parking lot.  Ms. Williams told him what had happened, and he escorted her to the HR office to report the incident.

26.     Gomez also went and got Vaughn, insisting he joint them in the HR office. With Vaughn and Gomez present, Ms. Williams gave a detailed statement to the female HR employee about what had happened in the walk-in. She described how Hinojosa had penetrated and injured her. She said she wanted to go to the police. She said she wanted to quit.

27.     The HR employee told Ms. Williams not to quit and instead told her to take some time off. The HR employee and Vaughn told her <u>not</u> to go to the police because the incident "wasn't serious enough" to involve law enforcement. The HR employee said that they would investigate and "handle everything." Ms. Williams accepted the leave of absence and took approximately a week off of work.

28.     Ms. Williams was bruised and scraped and in extreme pain for days after the assault

29.     Upon her return to work she saw Vaughn who took her aside to tell her "everything had been taken care of." Ms. Williams reasonably believed that Hinojosa had been fired and reported to the authorities. She did not encounter Hinojosa or hear word of him for several months.

30.     As noted, Ms Williams is an adult survivor of child sexual abuse. Her childhood abuser would come into her room at night and cover her mouth, so she couldn't scream, just as Hinojosa

COMPLAINT - 6

had done. For this reason, Hinojosa's sexual assault in the walk-in was particularly devastating, inducing crippling feelings of shame, fear, powerlessness, and self-loathing. Ms. Williams became extremely anxious, depressed, withdrawn and suffered from insomnia, nightmares, flashbacks, and intrusive memories.

31.     As is the case with many survivors of childhood sexual abuse, Ms. Williams never told anyone while it was happening. Likewise, Ms. Williams told very few people about Hinojosa's assault. For months after the assault, the only people that knew about what had happened were those who were present in the HR office on the day of the event.

32.     In or about October 2017, Vaughn took her aside in the kitchen and said, "We recently promoted Hinojosa. He's now sous chef. Chances are he may work your shift." Upon hearing this, "something inside of her broke."

33.     Beginning in November 2017 Hinojosa was placed on the same shift as Ms. Williams. This meant Hinojosa was now the boss of the entire kitchen, and there was no one above him who Ms. Williams could go to.

34.     Ms. Williams became suicidal. She started missing work frequently because she was unable to face Hinojosa. She was written up for attendance issues and Hinojosa almost always had a hand in writing her citations.

35.     Hinojosa continued to harass Ms. Williams with offensive comments and physical groping only now he did so less publicly.

36.     Ms. Williams found the continued harassment to be intolerable.

COMPLAINT - 7

37.     In April 2018, Ms. Williams found other employment and submitted her letter of resignation. Notably, she did not mention harassment or assault, out of shame and in fear of retaliation. She knew that Topgolf condoned Hinojosa's conduct as evidenced by their promoting him rather than having him arrested. She also knew that she would need a positive recommendation from Topgolf

38.     When Ms. Williams commenced her new job, she was suffering such severe depression and anxiety that she could not perform the essential functions of her employment. She was terminated.

39.     On information and belief Topgolf destroyed the evidence of Ms. William's prior reports of sexual assault and harassment by Hinojosa. Topgolf instructed Ms. Williams not to quit to avoid civil liability because as long as Ms. Williams remained an employee, she would be easier to control. And even though Topgolf had a duty to report that one of its employees had been raped on its premises by another employee it did not do so for the same reason. If it had police would have taken Ms. Williams to a hospital for examination of her injuries and the collection of Hinojosa's DNA.

## FIRST CAUSE OF ACTION

### (RAPE)

40.     Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 39 as if fully set forth herein.

41.     NRS 200.366 defines rape as follows:

> when a person "subjects another person to sexual penetration, or who forces
>
> another person to make a sexual penetration on himself or herself or another,

COMPLAINT - 8

or on a beast, against the will of the victim or under conditions in which the

perpetrator knows or should know that the victim is mentally or physically

incapable of resisting or understanding the nature of his or her conduct."

42.     Under NRS 193.130 rape with substantial bodily harm such as suffered by Plaintiff is a Class A felony punishable by life imprisonment without the possibility of parole.

43.     Hinojosa raped Plaintiff causing her substantial bodily harm. .

44.     As a direct and proximate result of the rape Plaintiff suffered substantial bodily harm and continues to suffer permanent emotional injuries including but not limited to anxiety, depression, hyper-vigilance, insomnia, post-traumatic stress disorder, and mistrust all to her damage in an amount to be proven at trial.

45.     As a further direct and proximate result of the rape Plaintiff has suffered loss of earnings and other employment benefits and other general and special damages in an amount to be proven at trial.

46.     Defendant's actions were criminal, fraudulent and oppressive and Plaintiff is thereby entitled to punitive damages from Defendants and each of them.

## SECOND CAUSE OF ACTION

## (ACCESSORY AFTER THE FACT AGAINST TOPGOLF)

47.     Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 46 as if fully set forth herein.

48.     Pursuant to NRS 195.030:

Every person . . . who, after the commission of a felony, destroys or conceals

or aids in the destruction or concealment of, material evidence, or harbors or

conceals such offender with the intent that the offender may avoid or escape

COMPLAINT - 9

1              from arrest, trial, conviction or punishment, having knowledge that such

2              offender has committed a felony or is liable to arrest, is an accessory to the

3              felony.

4 49.     Topgolf destroyed or concealed or aided in the destruction or concealment of material

5 evidence, including evidence of Plaintiff's prior complaints, by discouraging Plaintiff from

6 going to the police, and by failing to report the rape thereby causing the loss of evidence

7 which could have been used in the arrest and conviction of Hinojosa. Topgolf thereby aided

8 Hinojosa after the fact with the intent that Hinojosa avoid or escape from arrest, trial,

9 conviction or punishment.

10 50.     As a result of Topgolf's conduct in suppressing the evidence against Hinojosa, and

11 promoting him, he was placed in a position where he could continue to sexually harass and

12 assault Plaintiff.

13 51.     As a further direct and proximate result of Topgolf's aiding Hinojosa Plaintiff

14 suffered substantial bodily harm and continues to suffer permanent emotional injuries all to

15 her damage in an amount to be proven at trial.

16 52.     As a further direct and proximate result of Topgolf's conduct Plaintiff has suffered

17 loss of earnings and other employment benefits and other general and special damages in an

18 amount to be proven at trial.

19 53.     Defendant's actions were criminal, fraudulent, and oppressive, and Plaintiff is thereby

20 entitled to punitive damages from Defendant.

21                         **THIRD CAUSE OF ACTION**

22                             **(ASSAULT)**

23

24 COMPLAINT - 10

54.     Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 53 as if fully set forth herein.

55.     On numerous occasion Defendant Hinojosa made lewd and vulgar comments about Plaintiff and threatened to touch and touched various parts of Plaintiff's body without her permission or consent.

56.     In doing such acts Defendant Hinojosa intended to place Plaintiff in apprehension of an offensive contact with Plaintiff's person

57.     As a result of Hinojosa's acts Plaintiff was placed in apprehension of offensive contact by Hinojosa.

58.     As a further direct and proximate result Plaintiff suffered substantial bodily harm and continues to suffer permanent emotional injuries all to her damage in an amount to be proven at trial

59.     Defendants' actions were criminal, malicious, and oppressive, and Plaintiff is thereby entitled to punitive damages from Defendants and each of them.

## FOURTH CAUSE OF ACTION

### (BATTERY)

60.     Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 59 as if fully set forth herein.

61.     Hinojosa made contact with Plaintiff's body. Hinojosa touched, grabbed, groped, and fondled Plaintiff in a rude, violent, vulgar, harmful, and oppressive manner.

62.     At all times Plaintiff found the contacts Hinojosa made with her body to be harmful and offensive. At no time did Plaintiff consent to any such contacts.

COMPLAINT - 11

63.    As a direct and proximate result of the battery described above Plaintiff was greatly humiliated, shamed, and embarrassed. Plaintiff has suffered permanent emotional damages all in an amount to be proven at trial.

64.    Defendants' actions were criminal, malicious, and oppressive, and Plaintiff is thereby entitled to punitive damages from Defendants and each of them.

## FIFTH CAUSE OF ACTION

### (FALSE IMPRISONMENT)

65.    Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 64 as if fully set forth herein.

66.    As described above Hinojosa's acts caused Plaintiff's freedom of movement to be restrained in that they prevented Plaintiff from leaving a confined set up by Hinojosa.

67.    By reason of such false imprisonment Plaintiff was hindered and prevented from exercising freedom of movement and was caused to suffer great humiliation, pain, and mental anguish to her damages in an amount to be proven at trial.

68.    By reason of the criminal, forceful, and malicious false imprisonment of Plaintiff, Plaintiff is entitled to punitive damages from defendants in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (NEGLIGENCE AGAINST TOPGOLF)

69.    Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 68 as if fully set forth herein.

70.    Topgolf had a duty to Plaintiff to keep its workplace safe, its employees free from harassment, and to report serious crimes of violence against its employees, including Plaintiff.

COMPLAINT - 12

71.     Hinojosa made unlawful sexual advances, sexually assaulted, and raped Plaintiff during working hours on Topgolf's premises.

72.     Topgolf breached its duties to Plaintiff as described herein.

73.     Topgolf's breach of its duty was a direct and substantial factor in the harm caused to Plaintiff. As proximate result of Topgolf's negligence Plaintiff sustained substantial bodily injuries, permanent emotional injuries, and loss in earnings and other employment benefits to her damage in an amount to be determined at trial.

74.     Topgolf was grossly negligent and Plaintiff is thereby entitled to punitive damages from Topgolf.

**SEVENTH CAUSE OF ACTION**

**(NEGLIGENT SUPERVISION AND RETENTION AGAINST TOPGOLF)**

75.     Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 74 as if fully set forth herein.

76.     At all relevant times Topgolf was aware that Hinojosa was a sexual predator who engaged in sexual harassment and assault against Plaintiff and other employees.

77.     At all relevant times Topgolf knew or should have known that Hinojosa's conduct was against company policy and was in violation of applicable law.

78.     Topgolf had a duty of reasonable care to retain only competent, qualified, and safe employees.

79.     Topgolf knew that Hinojosa was unfit to work within the workplace and posed a risk to Plaintiff and other female coworkers. Topgolf breached its duty to Plaintiff by retaining Hinojosa as an employee.

COMPLAINT - 13

80.    As a direct and proximate result of Topgolf's negligent supervision and retention of Hinojosa suffered substantial bodily harm, permanent emotional injuries, loss of earnings, loss of employment benefits and other general and special damages in an amount to be proven at trial.

81.    Topgolf's actions were grossly negligent and Plaintiff is therefore entitled to punitive damages from Topgolf.

### NINTH CAUSE OF ACTION

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

82.    Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 82 as if fully set forth herein.

83.    As follows Defendants, and each of them, knew or should have known that the acts and omissions, above described, would cause Plaintiff severe emotional distress.

84.    As a direct and proximate result of the acts of Defendants, Plaintiff suffered and continues to suffer permanent emotional damages in an amount to be proven at trial.

85.    As a further direct and proximate result of Defendants' conduct Plaintiff suffered lost wages, employment benefits, and other general and specific damages in an amount to be proven at trial.

86.    Defendants' actions were grossly negligent, and Plaintiff is therefore entitled to punitive damages from Defendants and each of them.

### TENTH CAUSE OF ACTION

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

87.    Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 86 as if fully set forth herein.

COMPLAINT - 14

88.     As follows, Hinojosa's unlawful sexual advances, sexual assault, and rape were extreme and outrageous. Topgolf's failure to prevent Hinojosa's conduct and later aid of Hinojosa was extreme and outrageous.

89.     As a direct and proximate result of the acts of Defendants, Plaintiff suffered and continues to suffer permanent emotional damages in an amount to be proven at trial.

90.     As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered lost wages, employment benefits, and other general and special damages in an amount to be proven at trial.

91.     Defendants' actions were grossly negligent, malicious, and oppressive and Plaintiff is therefore entitled to punitive damages from Defendants and each of them.

<u>**ELEVENTH CAUSE OF ACTION**</u>

**(UNLAWFUL AND DISCRIMINATORY EMPLOYMENT PRACTICE)**

92.     Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 91 as if fully set forth herein.

93.     The facts set forth give rise to a cause of action for discrimination as provided in NRS Section 613.330:

       It is unlawful for an employer to discriminate against an employee on the basis of gender, or to otherwise create a hostile work environment for women.

94.      Defendants discriminated against Plaintiff by creating, allowing, condoning, and concealing a hostile work environment because of Plaintiff's gender. At all relevant times Topgolf knew or reasonably should have known of its employee's conduct and the hostile work environment alleged. Plaintiff was injured because of this discrimination.

COMPLAINT - 15

95.     As a direct and proximate result of the acts of Defendants, Plaintiff suffered and continues to suffer permanent emotional damages in an amount to be proven at trial.

96.     As a further direct and proximate result of defendants' conduct, Plaintiff has suffered lost wages, employment benefits, and other general and special damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment:

(a)     Declaring that the acts and practices complained of herein are in violation of NRS section 613.330 et. seq.

(b)     Directing Defendants to pay compensatory damages to Plaintiff for:

        (a)     Mental and emotional distress in a sum in excess of $1,000,000;

        (b)     General and special damages in a sum in excess of $1,000,000;

        (c)     Punitive damages in a sum in excess of $1,000,000;

        (d)     Attorney's fees according to law;

        (e)     Costs of suit incurred herein;

        (f)     Such other and further relief as this court deems just and proper.

DEMAND FOR A TRIAL BY JURY

Dated this 5th day of November 2018.

        _/s/ James J. Lee_____  _____
        James J. Lee Esq.
        Nevada Bar no 001909
        KETTNER LAW
        2150 W. Washington St, 402
        San Diego, CA  92110
        james@kettnerlaw.com

COMPLAINT - 16