Electronically Filed
4/19/2019 12:16 PM
Steven D. Grierson
CLERK OF THE COURT

**OPP**
James J. Lee, Esq.
NV Bar No. 1909
LEGAL OFFICES OF JAMES J LEE
2620 Regatta Drive #102
Las Vegas, NV 89128
james@leelitigate.com
702-521-4377 | 702-946-1115 (Fax)
Attorney for Plaintiff

### EIGHT JUDICIAL DISTRICT COURT

### CLARK COUNTY, NEVADA

| | |
|---|---|
| Ciara Williams,<br><br>        Plaintiff,<br><br><br>Silvino Hinojosa, and TOPGOLF USA Las Vegas, LLC, DOES 1 through X, inclusive, and ROES through X, inclusive<br><br>        Defendants.<br><br>SILVINO HINOJOSA,<br><br>        Counter-Plaintiff,<br><br>v.<br><br>CIARA WILLIAMS,<br><br>        Counter-Defendant. | CASE NO: A-18-784031-C<br><br><br>**OPPOSITION TO DEFENDANT TOPGOLF, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

    Plaintiff Ciara Williams (Williams), by and through her counsel of record, Legal

Offices of James J. Lee, files her opposition to TopGolf USA Las Vegas, LLC's ("TopGolf")

Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff's opposition is made and based

on Nevada Rule of Civil Procedure 12(b)5, the following memorandum of points and

OPPOSITION - 1

authorities, all pleadings and papers on file herein, and the oral argument, if any, this court deems appropriate.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    INTRODUCTION

The facts in this case are horrific. It arises out of Plaintiff Silvino Hinojosa's (Hinojosa) brutal and relentless campaign of sexual humiliation, sexual assault, and rape.[1] It also arises out of TopGolf's ratification of Hinojosa's criminal conduct and attempt to conceal that conduct. Not only did TopGolf do nothing to respond to Plaintiff's multiple reports of Hinojosa's harassment and assault prior to her rape, but in response to her report of rape, told Plaintiff not to report it to the police and telling her it would do so. In fact, all Topgolf did was move Hinojosa to a different shift, and then, astonishingly, promote him. Then it moved him back to Plaintiff's shift, where he continued to harass, intimidate, and humiliate her, until she quit in desperation.

TopGolf's is not immune from liability under SIIS because it ratified Hinojosa's intentional conduct making TopGolt vicariously liable for his conduct and for punitive damages[2]. Besides covering up the rape, Topgolf implicitly ratified Hinojosa's conduct by doing nothing to stop him when Plaintiff complained of the harassment and by promoting him

---

[1]Nevada law defines rape in NRS Sec. 200.366: A person who subjects another person to sexual penetration…against the victims will is guilty of [rape]. *Mcnair v State of Nevada*, 825 P.2d (Nev.1992)

[2] NRS 195.030 states in pertinent part: "Every person who is not the spouse or domestic partner of the offender and who, after the commission of a felony, destroys or conceals, or aids in the destruction or concealment of, material evidence, or harbors or conceals such offender with intent that the offender may avoid or escape from arrest, trial, conviction or punishment, having knowledge that such offender has committed a felony or is liable to arrest, is an accessory to the felony.

OPPOSITION - 2

after Plaintiff reported that he raped her. It is liable to Plaintiff for defrauding her about "handling" Hinojosa and for intentional infliction of emotional distress by putting Hinojosa back in a position of power over her, after leading her to believe for over six months that he had been fired.

It is axiomatic that worker's compensation law does not insulate an employer for its own intentional acts nor the intentional acts of employees that it knows of or ratifies. Worker's compensation law covers accidents, and Defendants acts were not accidental. TopGolf's argument that Hinojosa's conduct was not foreseeable fails because Plaintiff reported the conduct and it was common knowledge in the kitchen where Plaintiff worked. It was witnessed by supervisors who did nothing and there is no question that it occurred in the course and scope of his employment.

Nevada's anti-discrimination laws do not protect Topgolf because those laws do not preempt state law tort claims. TopGolf suggests that Plaintiff may only pursue sex discrimination claims. The United States Supreme Court has held that Title VII, which Nevada's anti-discrimination law is based on, does <u>not</u> preempt common law tort claims. *Alexander v Gardner-Denver Co.,* 415 U.S. 36, 48-49, 94 S. Ct. 1011 (1974). *See Switzer v Rivera* 174 F. Supp. 2d 1097, U.S. Dist. Lexis 20371 (Nev.2001) Nor are Plaintiff's claims premised on discrimination. They are premised on intentional torts. Plaintiff is not attempting to cast claims of unlawful employment practices such as sexual assault and battery. She is not confined to anti-discrimination laws even though her claims could be cast as such. Finally, Topgolf is liable for punitive damages because it ratified and adopted Hinojosa's conduct and conspired with him in covering it up making it a joint tortfeasor. It also acted with oppression,

OPPOSITION - 3

fraud and malice in defrauding Plaintiff about handling Hinojosa and in placing him back on her shift.

## II. STATEMENT OF FACTS RELEVANT TO THIS OPPOSITION

Plaintiff commenced working at TopGolf in April 2016 (First Amended Complaint ("FAC."), ¶ 8). Her supervisor, Hinojosa was a sexual predator who had sexually harassed at least four other women on TopGolf's premises (FAC ¶ 17) all of whom had reported same. In December of 2016, Hinojosa began sexually harassing plaintiff. including but not limited to making crude, vulgar remarks, groping her, and thrusting his hips against her hips and buttocks in the kitchen. His reputation for such conduct was well known within the kitchen and by TopGolf managers, including Chris Vaughn (Vaughn) and James (Linares), both of whom directly witnessed Hinojosa's conduct, and were directly informed of it through Plaintiff's reports to them (FAC ¶14). Despite this, TopGolf did nothing to stop Hinojosa's conduct, in violation of its policies and procedures (FAC ¶10). On one occasion, after Hinojosa had physically groped her, Plaintiff reported him to Human Resources and filled out written paperwork (HR) (FAC ¶17). She was told that her complaint would be investigated and that she would receive copies of the paperwork she had filled out. In fact, no investigation was done, and she never received copies of the paperwork. This occurred on at least two occasions (FAC ¶16).

Plaintiff is a survivor of childhood sexual abuse. As Hinojosa's relentless campaign of sexual assault, abuse, and humiliation continued and TopGolf did nothing to intervene or protect her despite her multiple reports and their promises to investigate, Plaintiff began to develop symptoms of extreme depression and anxiety and withdrew from social interaction. She suffered from insomnia, nightmares, flashbacks, and intrusive memories (FAC ¶ 17-18, 31). In

OPPOSITION - 4

May of 2017, Hinojosa followed Plaintiff into the walk-in freezer, which had thick insulated walls, cornered and restrained her, and digitally penetrated her while she screamed for help. The harder she struggled to free herself, the more aggressive he became in digitally raping her, injuring her vagina. Throughout the assault which lasted over a minute, he cupped his hand over her mouth, muffling her screams and said things like "I told you I was going to have you one way or another," and "I know you want it" while laughing. When he finally slightly loosened his grip and she was able to free herself and push him away, he said "I'm not going to wash my hands for the rest of the day!" as she ran out of the freezer in hysterics (¶¶ 19-24).

Plaintiff's coworker Brian Gomez ("Gomez") witnessed her weeping and in severe emotional distress and asked her what happened. When she detailed what Hinojosa had done, Gomez informed Vaughn, and together they escorted her to HR to report the incident. Plaintiff gave a detailed statement to the HR employee about how she had been assaulted, penetrated, and injured by Hinojosa in the walk-in freezer. She said she wanted to quit and go to the police. Plaintiff was told not to quit and that it "wasn't serious enough to involve law enforcement." She was told to take a week off and promised that HR would investigate and handle everything. She agreed and was absent for approximately one week (FAC ¶¶ 26-28). Upon her return, Vaughn took her aside and told Plaintiff that "everything had been taken care of." She took this to mean that Hinojosa had been reported to authorities and terminated, and that she would not have to see him again. She reasonably relied on TopGolf's representation in this regard to stay on as an employee. Plaintiff did not see Hinojosa or hear word of him for several months (FAC ¶¶ 30).

Then, in or about October 2017, Vaughn informed Plaintiff, to her surprise, that Hinojosa had not been reported or fired, but instead had been promoted and would become the

OPPOSITION - 5

top kitchen manager. Vaughn also told her that Hinojosa would likely be working her shift again. When she heard this, "something inside her broke" (FAC ¶¶ 33). Commencing in November 2017, Plaintiff worked with Hinojosa again as her supervisor, this time with no manager above him whom she could report to. She became suicidal and started missing work frequently because she felt unable to face Hinojosa. She was written up for attendance and performance issues and Hinojosa almost always had a hand in writing her citations, though he would have other employees sign the citations so they could not be directly traced to him (FAC ¶¶ 33-37). Most devastatingly, Hinojosa continued to harass her with offensive comments, physical groping, and intimidation only this time less publicly (FAC ¶ 36). Plaintiff found Hinojosa's promotion and assignment to her shift to be intolerable, and in April 2018 she finally found new employment and quit in desperation. When she commenced her new job, she was suffering such severe depression and anxiety that she could not perform the essential functions of her employment and was terminated (FAC ¶ 39).

Plaintiff alleges that TopGolf destroyed the evidence of her prior reports of sexual harassment and assault by Hinojosa. Plaintiff alleges that TopGolf encouraged her not to quit to avoid the possibility of civil liability, and even though TopGolf had a duty to report Hinojosa's sexual assault on its premises, it did not do so in order to avoid Hinojosa's harassment, sexual assault, and rape becoming common knowledge among other employees, potentially triggering other lawsuits by his victims, and in order to help Hinojosa. If TopGolf had not suppressed evidence of Hinojosa's rape, the police would have been contacted and Plaintiff would have been taken to the hospital for an examination of her injuries and collection of DNA evidence of rape. Because of TopGolf actions, that evidence has been lost (FAC ¶40).

OPPOSITION - 6

**ARGUMENT**

**1. The Nevada Industrial Insurance Act Does Not Immunize Employers from their Intentional Acts.**

Topgolf contends that all of Plaintiff's claims are barred by the Nevada Industrial Insurance Act (NIIA). Nevada's workers compensation laws generally provide that workers compensation is the exclusive remedy against an employer for an injury that arises in the course and scope of employment. However, there are exceptions to this rule. One is that workers compensation does not bar an action against an employer for its intentional acts. In *Advanced Countertop Design v. Dist. Ct.,* 115 Nev. 268, 270, 984 P.2d 756, 758 (1999) the Supreme Court wrote:

> We have "recognized that employers do not enjoy immunity, under the exclusive remedy provisions of the workers' compensation statutes, from liability for their intentional torts. . . . An employer who commits an intentional tort upon an employee cannot claim that the intentional act resulted in an accidental injury."

In other words, the NIIA only applies to *accidents* sustained arising out of and in the course of employment. NRS ¶ 616A.020(1). In this case, Plaintiff has alleged facts sufficient to sustain an action for intentional infliction of emotional distress against Topgolf when it intentionally placed Hinojosa on Plaintiff's shift and made him her immediate supervisor after he raped her. Plaintiff has also alleged facts sufficient to sustain a cause of action for fraud against Topgolf in representing to Plaintiff that it would terminate Hinojosa and report him to the police. Plaintiff relied on Topgolf's representations to her detriment by staying on as an employee which subjected her to continued abuse when he returned. At a minimum, Topgolf's intention in doing so is a question of fact that cannot be resolved on Topgolf's motion.

**2. Topgolf Does Not Enjoy Workers Compensation Immunity from Hinojosa's Intentional Acts Because It Ratified and Conspired with Him to Cover Them Up.**

When a principal ratifies and adopts the intentional acts of his agent he is liable for those intentional acts. "Where, as here, intentional physical acts of an employee, ratified by the

OPPOSITION - 7

employer, allegedly cause harm primarily emotional in nature, we conclude that the exclusive remedy provisions [of workers compensation] do not preclude civil claims". *McGee v. McNally* 119 Cal.App.3d 894, 896-897; 174 Cal. Rptr.233 (1981)

Topgolf relies on *Conway v. Circus-Circus Casino*, *Inc* 116 Nev. 870, 874-75, 8 P3d 837, 840. However, that case involved the release of toxic gas that sickened some workers. The injury was <u>accidental</u> and there was no allegation of specific intent to harm, rather the Plaintiffs had *pled* what was essentially a negligence action as an intentional tort. The court found that the NIIA applied and that the Plaintiffs sole remedy was injunctive relief. Topgolf relies on *Cummings v United Resort Hotels*, Inc., 85 Nev. 23, 25-26, 449 P.2d 245, 247-248 (1969). However, that case involved a wrongful death action brought by the parents of a worker who was killed on the defendant's work premises by a mentally ill co-worker. There, unlike in the present case, there was no allegation that the employer knew or had reason to foresee the propensity of the co-worker to commit violent acts. Nor was there an allegation of the employer's ratification of the violent act. Topgolf relies on *Kennecott Copper Corp. v. Reyes*, 75 Nev. 212, 337 P.2d 624 (1959).  In that case however, the Plaintiffs alleged that the death of their son in a land-slide, which occurred as the result of negligence of the employer, was an intentional act because the defendant knew or should have known about the risk of a slide. The Supreme Court held that the complaint sounded in negligence, not intentional tort, and upheld the dismissal of their claims. Unlike the present case there was no malicious intentional act by an individual or the employer and the court found that employers act and omissions were covered by the industrial insurance act. Here Plaintiff has pled sufficient facts to establish that Topgolf ratified Hinojosa's conduct.

OPPOSITION - 8

**3.      Topgolf is liable for Hinojosa's Intentional Conduct Under the Doctrine of Respondent Superior.**

Top Golf argues that even if Plaintiff's tort claims are not barred by NIIA, Topgolf cannot be liable under an intentional tort theory for Hinojosa's conduct because it was an independent act that was not reasonably foreseeable (Motion pg.9). Pursuant to NRS 41.745, an employer is not liable for the intentional acts of its employees <u>only</u> if the conduct of the employee:

(a) Was a truly independent venture of the employee;

(b) Was not committed in the course of the very task assigned to the employee; and

(c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his employment…conduct of an employee is reasonably foreseeable if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury. NRS 41.745.

In fact, application of the above factors demonstrate that Topgolf <u>is</u> liable for Hinojosa's conduct. Hinojosa is a supervisor and therefore a managing agent. Hinojosa's acts were not an independent venture on his part. All of the acts complained of occurred in the course of his employment. They occurred in and around the kitchen area while Hinojosa was fulfilling his duties a duties as a chef. Hinojosa grabbed Plaintiff's buttocks as she tried to move past him in the kitchen, grabbed her waist as she was going to get kitchen supplies and followed her into the kitchen freezer while she went in to get kitchen supplies. Second, Hinojosa's conduct was foreseeable. Topgolf was on notice of his behavior. Its managers witnessed Hinojosa's harassment of Plaintiff. Moreover, Plaintiff made formal written reports to HR. Taking Plaintiff's allegations as true, which it must, the court must conclude that Hinojosa had assaulted

OPPOSITION - 9

four (4) other female workers on Topgolf's premises and Topgolf was aware of that fact. Thus, under NRS.745 Topgolf is liable for Hinojosa's conduct as an employee.

Topgolf cites *Wood v Safeway Stores,* 121 Nev.724; 121 P2d 1026 (Nev. 2005) as support for its argument that Hinojosa's conduct was not foreseeable. In Wood, the Plaintiff employee (who was mentally handicapped) was sexually assaulted by an employee of an independent contractor working on the employer's premises. There was no evidence that the employer/contractor  had reason to foresee the assault—the contractor had performed a background check when it hired him—and the court concluded that the employer was not liable for his conduct under NRS; the court held that, therefore, SIIIS applied and the victim was limited to worker's compensation claims. Likewise, the court found that the criminal act was not foreseeable to the independent contractor who had hired the assailant and therefore the criminal act was an independent intervening act. Here, Hinojosa's conduct and the potential for serious sexual assault was not only foreseeable from Topgolf's perspective, but something that should have been expected.

**4.     Topgolf is Liable for Punitive Damages**

Topgolf argues that Plaintiff has not plead sufficient facts to prove oppression, fraud or malice on the part of Topgolf. Topgolf is incorrect. Plaintiff has alleged enough facts to establish that Topgolf conspired with Hinojosa to cover up the rape making it a joint tortfeasor. Plaintiff has alleged that Topgolf lied to Plaintiff that it would report Hinojosa to the police. Plaintiff has alleged that Topgolf promoted Hinojosa after it learned that he had raped Plaintiff. Plaintiff has alleged that Topgolf put him back on her shift instead of terminating him, intentionally subjecting to her to severe emotional distress. Plaintiff has alleged that Topgolf destroyed evidence of Hinojosa's sexual assaults before the rape and prevented the preservation of

OPPOSITION - 10

evidence by failing to report the rape to the police. All of these acts implicate oppression, fraud and malice and are sufficient to sustain an action for punitive damages against Topgolf.

**5.    Plaintiff Should Be Afforded an Opportunity to Amend the Complaint.**

If for any reason the court concludes that some or all of Plaintiff's present complaint should be dismissed, Plaintiff respectfully requests an opportunity to amend. For example, if the court concludes that Plaintiff must assert a cause of action under Title to VII to maintain her right to proceed, Plaintiff should be allowed to do so. As Topgolf undoubtably knows by now, Plaintiff timely filed a charge with the EEOC and recently received a Right To Sue letter allowing her to proceed under anti-discrimination law. Likewise, Plaintiff should be allowed to amend to address any concerns the court may have about the sufficiency of her causes of action for intentional infliction as it relates to Topgolf, as well as fraud and civil conspiracy.

## CONCLUSION

For the above and foregoing reasons, the court should deny Topgolf's Motion to Dismiss.

 /s/  James J. Lee, Esq.
JAMES J. LEE, ESQ.

OPPOSITION - 11

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I hereby certify that I am an employee of the Legal Offices of James J. Lee, ESQ and that on the 2nd day of July, 2018, I caused a true and correct copy of NOTICE OF EARLY ARBITRATION CONFERENCE to be served via the Court's electronic filing and service systems to the following parties and all parties on the current service list:

t.boley@bandafirm.com
clarissa@bandafirm.com
Thomas D. Boley, Esq.
Boley & AlDabbagh
1900 E. Bonanza Rd.
Las Vegas, NV  89101

Erica.chee@ogletreedeakins.com
Erica Chee
Ogletree Deakins Nash Smoak & Stewart
3800 Howard Hughes Pkwy #1500
Las Vegas, NV  89169

/s/ Kelly Tassinari
Employee of Legal Ofc of James J Lee

OPPOSITION - 12